*Armstrong vs Hodges et al.*
vs
Hodges *et al.*
tially denying the assignment and sworn to, is all the statute of 1812 contemplated.·

---

## Armstrong *vs* Hodges *et al.*

### Error to the Franklin Circuit.

*Marriage.    Slaves.    Cohabitation.    Policy of the law.*

Chief Justice Robertson delivered the Opinion of the Court.

Armstrong filed his bill against *Hodges'* heirs and others, for a specific execution of a bond for a conveyance of a small tract of land given by the ancestor, *Hodges*, to a free white woman named *Thomason Grady*, who cohabited with a black man named *James Hog* and sometimes called *James Grady*, and assigned by the obligee and ·said *James* to the complainant. The alleged equity was resisted on the ground of a previous sale by *Thomason Grady* to *William Jackson*, whose equity had been transferred to *William Hodges*, to whom the heirs of the deceased obligor had made a conveyance. But the complainant attempted to avoid this defence by insisting that *Thomason Grady* was the wife. of the said *James*, and that, therefore, her sale to Jackson was void.

Chancery.

*Case 33.*

*September* 29.

The case stated.

The Circuit Court dismissed the bill, and we think rightly.

Even on the presumption that *Thomason Grady* was, *de jure*, a married woman, there would certainly be great difficulty in maintaining that the assignment by herself and husband to *Armstrong*, without any privy examination, passed to him an available equity, and especially as he had notice of her prior sale, and the transferree of her first vendee is entrenched behind the legal title fairly obtained.

A marriage between a free white woman & her negroe slave, will not be presumed from cohabitation.

But, although there is abundant proof of cohabitation and occasional recognition, yet the fact that the said *James* was a slave whom the said *Thomason* had bought and never expressly emancipated, but *sometimes threatened to sell*, would alone be sufficient to repell the presumption of marriage, which would result, in ordinary cases, from mere cohabitancy ostensibly in the conjugal relation; and this repellant circumstance is fortified by the additional fact that a heavy penalty, by imprisonment and fine, is denounced against marriage between white and black persons, by an act of the colonial Legislature of Virginia, of 1753, (*Stat. Law*, 1153,) which was adopted by the constitution of this State, and is still in force here.

Under these circumstances, in the absence of more direct and specific proof, the presumption should be, that the relation between the black man slave and free white woman, was that of *concubinage* rather than *marriage;* and even if this be doubted, we are clearly of the opinion that there is not sufficient proof of the said *Thomason's coverture* to require us to decide that her sale to *Jackson* was void for want of legal capacity to bind herself or make a valid contract.

Marriage between white persons and negroes is inconsistent with decorum, social order, public policy and national sentiment, and void as against the policy and implied prohibition of the local law.

Moreover, we are inclined strongly to the opinion that the marriage, if ever in fact consummated or intended, was void as against the policy and implied prohibition of the local law. It rather seems to us that our local law should be understood as prohibiting such marriages, as inconsistent here with decorum, social order, public policy, and the national' sentiment; and if so, they must, therefore, be deemed *unlawful,* and of course *void.*

The decree of the Circuit Court is, therefore, affirmed.

*Todd* for plaintiff; *Morehead and Reed* for defendants.